IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELIE SWITZER                    *
                Plaintiff
                                    *

        vs.                         CIVIL ACTION NO. MJG-13-1613
                                    *

BENEFITS ADMINISTRATIVE
COMMITTEE                           *

            Defendant               *

*       *       *       *       *       *       *       *       *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Plaintiff's Motion for Summary Judgment,
or in the Alternative, Motion to Remand [Document 12], Defendant's
Motion for Summary Judgment [Document 13], and the materials submitted
relating thereto.  The Court finds a hearing unnecessary.


I.    BACKGROUND

Plaintiff Michelie Switzer ("Switzer") worked for Nationwide
Insurance Company ("Nationwide") from April, 1987 until November, 2010
when she began disability leave due to a fall she sustained while at
home in September, 2010.  AR 130, 1230.  Switzer has brought the
instant lawsuit against Defendant Benefits Administrative Committee
("the BAC"), under the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. § 1001, et seq., for denial of long-term disability
("LTD") benefits.

A.    <u>The Benefits Plan</u>

While employed at Nationwide, Switzer was covered by the Nationwide Mutual Insurance Companies and Affiliates Plan for Your Time and Disability Income Benefits ("the Plan"), a self-funded benefits plan under ERISA.   <u>See</u> AR 2, 58-64.   The BAC is the Plan Administrator. AR 58-59.

To qualify for LTD benefits, an employee covered by the Plan must have an "LTD Disability" or be "LTD Disabled."

> "LTD Disability" or "LTD Disabled" means a disability or disablement that results from a substantial change in medical or physical condition as a result of Injury or Sickness and that prevents an Active Associate from engaging in Substantial Gainful Employment for which she is, or may become, qualified.   Continuation of an existing medical or physical condition will generally not constitute a substantial change in medical or physical condition if Claimant previously demonstrated through attendance and/or work that Claimant has been able to engage in Substantial Gainful Employment, or such medical or physical condition could be or has been accommodated.   A substantial change in medical or physical condition may be evidenced by the change or loss of at least one of the Activities of Daily Living.

AR 13-14. "Substantial gainful employment" is defined as "any occupation or employment from which an individual may receive an income equal to or greater than one-half of such individual's Covered Compensation as of her Date of Disability." AR 17.   Pursuant to the Plan, if Switzer were LTD Disabled, she would be entitled to receive 60% of her covered compensation in effect on the date of disability

until she is 65 years old. AR 38, 42.

B.   Injury and Short-Term Disability Benefits

In September 2010, while at home, Switzer tripped and fell down several steps, injuring her right knee, lower back, and right hip.  AR 280.  On November 16, 2010, she underwent a right knee arthroscopy and began disability leave.  AR 290, 1119.

Switzer's short-term disability benefits commenced on November 23, 2010.  AR 1230.  On November 24, 2010, Switzer was diagnosed with Lumbar Radiculopathy.  AR 1230.  On November 29, 2010, Switzer's treating physician Dr. Lysa Charles, M.D. noted that Switzer was "doing well" after the arthroscopy.  AR 1120.

At a January 6, 2011 visit, Switzer reported a tingling sensation in her calf and foot, but no swelling or back pain.  Dr. Charles noted that Switzer was "[d]oing relatively well." AR 1121.  On March 16, 2011, Switzer was diagnosed with Spondylosis Lumbosacaral.  AR 1230. On May 9, 2011, Dr. Charles noted on a Nationwide disability benefits form that Switzer was unable to drive, sit, stand, or walk "for a period of time." AR 461.  Dr. Charles reported that no return to work was expected and that Switzer had a poor prognosis for a full recovery without restriction.  AR 461.

Switzer's short-term disability benefits ended on May 31, 2011. AR 1230.

3

C.   <u>LTD Benefits - June 1, 2011 through March 3, 2012</u>

    1.   <u>Reports from Dr. Charles</u>

Switzer began receiving LTD benefits on June 1, 2011.  AR 1230. She was examined by Dr. Charles on July 18, 2011.  AR 381.  Dr. Charles reported that Switzer was experiencing back pain at a level of 7/10 and that physical therapy and pain management injections had not eased the pain.  AR 381.  Dr. Charles expressed her opinion that Switzer "is suited for sedentary work only."  AR 382.

On a Long-Term Disability Attending Providers' Statement dated August 5, 2011, Dr. Charles noted that she last examined Switzer on July 18 and that Switzer was unable to return to work.  AR 465-66.  On August 15, 2011, Nationwide requested copies of Dr. Charles's last 3 office progress notes, test results, and procedure notes for Switzer "[f]or continued evaluation of Disability benefit certification."  AR 290.

On September 2, 2011, Dr. Charles responded that Switzer could return to sedentary work that did not require a significant commute, under 20-30 minutes.  AR 246.  Two months later, on November 4, 2011, on a Long-Term Disability Attending Providers' Statement, Dr. Charles once again reported that Switzer was unable to return to work.  AR 242. Dr. Charles also noted that Switzer had been discharged from her care. AR 241.

>       2.   Labor Market Survey / Transferrable Skills
>            Analysis and Independent Medical Evaluation

Nationwide began to investigate Switzer's ability to return to work in the Fall of 2011.  On September 16, 2011, Nationwide referred Switzer's file to GENEX Services, Inc. for a Labor Market Survey and Transferable Skills Analysis and ("LMS/TSA").  AR 353-55.  In completing the LMS/TSA, GENEX reviewed Switzer's job summary, Dr. Charles's note from September 2, 2011 indicating that Switzer could return to sedentary work, and office notes from both Dr. Charles and Switzer's pain management doctor from 2010-2011.  AR 353.  The LMS/TSA, dated September 22, 2011, identified 3 positions with sedentary work that met Switzer's skills, abilities, and qualifications, with salaries ranging from $10.00/hour to $16.00/hour.  AR 354-55.

Nationwide referred Switzer for an independent medical evaluation ("IME") with Dr. Louis E. Levitt, M.D., Board-certified in orthopedic surgery.  Dr. Levitt examined Switzer on November 28, 2011.  AR 280-81.  He reported in the IME that Switzer "filled out a pain diagram . . . in a manner that suggests she has excessive pain responses [and that she] perceives herself to be quite disabled," but he noted that Switzer had "recovered quite nicely" from her injury.  AR 282.

Dr. Levitt observed that that there was a "lack of any objective measure of pathology to substantiate [Switzer's] ongoing clinical complaints."  AR 282.  He determined that "Switzer has no findings

consistent with a lumbar radiculopathy [or] a lumbar discopathy [or a] spinal injury from her fall." AR 283. Dr. Levitt concluded that Switzer "has no long term disability" and "has the capacity to return to work immediately" without modification. AR 283-84.


### 3. First Denial of LTD Benefits

In a letter dated February 16, 2012, Nationwide's Disability Assessment Committee ("DAC"), informed Switzer that she "no longer qualif[ied] for Long Term Disability benefits under the [Plan]" and that the benefits would terminate effective March 3, 2012. AR 137. Based upon a review of the Plan, documentation from Dr. Charles (including the September 2, 2011 note indicating that Switzer was capable of sedentary work), and the IME from Dr. Levitt, the DAC "determined that [Switzer] d[id] not meet the definition of Disability under the Plan [because she was] capable of engaging in Substantial Gainful Employment." AR 137-38. The letter informed Switzer that, pursuant to ERISA, she could submit a written request to the BAC for a review of the decision. AR 138. The letter noted that the request for review must explain why Switzer felt her claim should be reviewed and that she could submit additional medical information. AR 138.


### D. Switzer's First Appeal of the Denial of LTD Benefits

#### 1. Additional Information Submitted by Switzer

Switzer retained an attorney – counsel in the instant lawsuit –

6

who filed a formal appeal of the DAC's decision with the BAC on her behalf on August 9, 2012.[1]   AR 130-36.   Attached to the appeal were a Long-Term Disability Attending Providers' Statement from Dr. K. Ambalavanar dated February 20, 2012 and an assessment from vocational consultant Martin Kranitz dated July 24, 2012.

In the Long-Term Disability Attending Providers' Statement, Dr. Ambalavanar reported that he examined Switzer on February 2, 2012.   AR 150.   He noted that Switzer had a Class 4 (out of 4) physical impairment, meaning that she had "[c]omplete/severe limitation of functional capacity, [i]ncapable of any activity."   AR 151.   Dr. Ambalavanar indicated that modifications would not allow Switzer to return to work.   AR 151.

Mr. Kranitz completed a vocational assessment at the request of Switzer's attorney.   AR 157.   He reviewed the DAC decision, the statement from Dr. Ambalavanar, the IME from Dr. Levitt, the LMS/TSA, and 5 statements from Dr. Charles.[2]   AR 157.   Mr. Kranitz explained that the LMS/TSA contained inaccuracies.   AR 158-59.   He also noted that the IME was "somewhat specious" because Dr. Levitt "does not point out that there are people (very credible people) for whom no abnormalities can be found in the diagnostic [screening] studies but [who] still make consistent and believable complaints about pain and

---

[1]    Switzer initially filed an appeal of the DAC decision, pro se, which her attorney withdrew.   AR 1061, 1063.

[2]    The September 2, 2011 note from Dr. Charles to Nationwide indicating that Switzer could return to sedentary work was not listed as one of the documents that Mr. Kranitz reviewed.

limitations."  AR 159.  Mr. Kranitz concluded that "Switzer meets the definition of disability under the [Plan]."  AR 159.

In the first-level appeal letter of August 9, 2012, Switzer's attorney contended that the record demonstrated that Switzer was entitled to continued LTD benefits.  He argued that there had not been a full and fair review of Switzer's eligibility for LTD benefits because the DAC's decision was not based upon substantial evidence and that the DAC's denial letter failed to comply with ERISA's notice requirements.  AR 135.

### 2.   Additional Documentation from Reviewing Body

Switzer's first-level appeal was referred to Sedgwick Claims Management Services Appeals Unit ("Sedgwick"), an independent third party.  AR 522.  Sedgwick reviewed the administrative record and additional submissions from Switzer, as well as a second LMS/TSA from GENEX and a report from Dr. John L. Turner, M.D., an independent physician advisor and Board-certified Neurosurgeon.  AR 96.

Sedgwick referred Switzer's claim to Dr. Turner, who submitted a report dated October 3, 2012, in which he determined that, based upon the available clinical information, "[Switzer] can work unrestricted" and that "there is nothing to support disability beyond 03/04/2012." AR 346.  Dr. Turner noted that he spoke with Dr. Ambalavanar, who stated that he only examined Switzer twice within a two-week period in February 2012 and that Switzer had complained of pain and wanted to be off work.

AR 342.   Dr. Turner made two attempts to speak with Dr. Charles, but was unable to do so.   AR 343.   Dr. Turner observed that Switzer's last reported physician contact was in February 2012.   He concluded that "[t]here is no evidence of disability" and that Switzer "can work unrestricted."   AR 345.

GENEX submitted a second LMS/TSA dated November 30, 2012.   AR 494-501.   GENEX reviewed the independent reports from Dr. Levitt and Dr. Turner and noted that "both doctors concur that Ms. Switzer is able to perform her pre-disability occupation as a[n] insurance adjuster." AR 494.   The LMS/TSA identified 17 available employment positions for Switzer based upon her training and work experience that involved sedentary to light physical demand, were located within 50 miles of Swizter's home, and that had salaries ranging from $14.86/hour to $30.60/hour.   AR 495, 501.


### 3.   Second Denial of LTD Benefits

In a letter dated December 10, 2012, Sedgwick sustained the denial of LTD benefits, explaining that its decision was based in part upon clinical and vocational findings that indicated "Switzer can work unrestricted[, that] there is nothing to support disability beyond March 3, 2012," and that "Switzer is [able] to perform other tasks that would allow her to perform other jobs."   AR 96.   Sedgwick concluded that "Ms. Switzer's claim remains denied as she is not LTD Disabled as defined by the Plan."   AR 96.   The denial letter stated that there

was "a second and final level of appeal available" and that the written request for an appeal should be submitted to the BAC and should include an explanation of why Switzer believed Sedgwick's decision was wrong and any other information Switzer believed was relevant to the appeal. AR 96-97.


     E.    <u>Switzer's Second Appeal of the Denial of LTD Benefits</u>

        1.    <u>Additional Information Submitted by Switzer</u>

Switzer's attorney filed the request for the second-level appeal on January 30, 2013.  AR 98-99.  On February 12, 2013, Switzer's attorney supplemented the appeal with: (1) an MRI of Switzer's cervical spine taken November 10, 2011; (2) a report from Jenna Grossman, PA-C (physician assistant in orthopedics) of Chesapeake Orthopaedic & Sports Medicine Center dated March 9, 2012; (3) a report from Dr. Ambalavanar dated January 29, 2013; and (4) an Addendum Report from vocational consultant Mr. Kranitz dated January 29, 2013.  AR 92-94.

The MRI revealed "a moderate circumferential disk osteophyte" at C5-C6 and "a moderate broad-based annular bulge at C3-C4."  AR. 101. The report from Ms. Grossman noted that Switzer complained of continuing sharp pain in her lower back, neck pain radiating down her shoulders, and pain down into her right hip and leg.  AR 104.  Ms. Grossman wrote that Switzer had a normal lumbar curve, no scoliosis, and could heel-and-toe-walk normally.  AR 105.  Dr. Ambalavanar reported that he examined Switzer for the first time in 11 months in

January 2013 and that her joint pain remained unchanged.  AR 110.

Mr. Kranitz stated in the Addendum Report that he had reviewed the reports from Nationwide and Dr. Turner and noted that he found it "strange" that Dr. Turner "discounted" the findings of Dr. Ambalavanar "because he only saw Ms. Sweitzer [sic] twice when in most cases an IME doctor [like Dr. Levitt] only sees an individual once and uses medical reports to form an opinion."  AR 116.  Mr. Kranitz also stated that Dr. Turner's report "ignored" reports from Dr. Charles, dated March 28, 2011 and August 1, 2011, that indicated Switzer was unable to work.  AR 116.  Mr. Kranitz concluded that he stood by the findings in his original report.  AR 116.

In the second-level appeal letter, Switzer's attorney wrote that "it is our contention that Nationwide failed to conduct a full and fair review of this claim and its decision to deny benefits to Ms. Switzer is arbitrary and unreasonable in view of this supporting documentation."  AR 94.

### 2.   Third Denial of LTD Benefits

In a letter dated March 21, 2013, the BAC issued "the final decision of the administrative review process" and denied Switzer's request to reinstate LTD benefits.  AR 120-22.  The letter listed the documents the BAC considered in reaching its decision, which included: the exhibits attached to Switzer's second level appeal; the IME from Dr. Levitt; medical records from Switzer's treating physicians and

consultants, including Dr. Ambalavanar, Dr. Charles, and Mr. Kranitz, dated April 20, 2010 through July 4, 2012; the first and second LMS/TSA; and Dr. Turner's report.   The BAC denial letter stated that "[b]ased on a thorough review of Ms. Switzer's appeal, the additional information provided by [her attorney], and the relevant Plan provisions, the [BAC] determined that Ms. Switzer does not meet the Plan's definition of LTD Disabled."   AR 121.   The letter stated that Switzer had exhausted her administrative rights under ERISA and that she had the right to bring a civil action.

Switzer filed the instant lawsuit against the BAC in this Court on June 4, 2013, pursuant to 29 U.S.C. § 1132.

By her Motion for Summary Judgment [Document 12], Switzer contends that there is no dispute of material fact that: (1) the BAC "failed to conduct a full and fair review of [her] claim;" (2) the BAC's decision to deny LTD benefits was an abuse of discretion because the decision was not based upon substantial evidence; and (3) the BAC "violated ERISA's appeal and notice requirements."[3]   [Document 12] at 11.

By its Motion for Summary Judgment [Document 13],[4] the BAC

---

[3]    In the alternative, Switzer contends that the case should be "remand[ed] to the plan administrator for a new review."   [Document 12] at 11.
[4]    The BAC captioned its Motion as a Motion to Dismiss and/or for Summary Judgment, but the Memorandum in Support of the Motion focuses almost exclusively on summary judgment.   Switzer is on notice that the BAC's Motion may be treated as one for summary judgment, not only by virtue of the caption on the BAC's Motion, but also by her having filed a Response to the BAC's Motion and her own Motion for Summary Judgment. The Court will treat the BAC's Motion as a Motion for Summary Judgment.

contends that it is entitled to summary judgment because the decision to deny Switzer's LTD benefits "was the result of a deliberate, principled, reasoning process and is supported by substantial evidence." [Document 13] at 22.

II.  STANDARDS OF REVIEW

     A.   Summary Judgment

     A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

     The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her."  Mackey v. Shalala, 43

13

F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

"Cross motions for summary judgment 'do not automatically empower the court to dispense with the determination whether questions of material fact exist.'" Equal Rights Center v. Archstone Smith Trust, 603 F. Supp. 2d 814, 820 (D. Md. 2009) (quoting Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983)). Rather, the court must examine each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.  Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).  The court may grant summary judgment in favor of one party, deny both motions, or grant in part and deny in part each of the parties' motions.


B.   Denial of ERISA Benefits

A court reviewing a plan administrator's denial of disability benefits under ERISA must first determine de novo whether the "plan's language grants the administrator . . . discretion to determine . . . eligibility for benefits." Gallagher v. Reliance Standard Life

Ins. Co., 305 F.3d 264, 268 (4th Cir. 2002).  The grant of discretion must be clear, but "no specific words or phrases are required."  Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 165 (4th Cir. 2013).

Here, the Plan states that the Plan Administrator, the BAC:

> has the power to take all actions required to carry out the provisions of the Plan and further has the following powers and duties,
>
> . . .
>
> (a)  To exercise discretion and authority to construe and interpret the provisions of the Plan, to determine eligibility to participate in the Plan, and make and enforce rules and regulations under the Plan to the extent deemed advisable;
>
> (b)  To decide all questions as to the rights of Participants under the Plan and such other questions as may arise under the Plan;
>
> . . .
>
> (e)  to determine the amount, manner, and time of payment of benefits hereunder . . . .

AR 58-59.  The Court finds, and the parties agree, that this language vests the BAC with the "discretion and authority to construe and interpret the provisions of the Plan and to pay all benefits."  Compl. ¶ 6; Ans. ¶ 6.

When a plan administrator's denial of benefits "was based on an exercise of discretion . . . judicial review [of the denial of benefits] is for abuse of discretion."  McKoy v. Int'l Paper Co., 488 F.3d 221, 223 (4th Cir. 2007).  Here, the parties also agree that the appropriate standard of review is for an abuse of discretion.  See BAC's Motion

[Document 13] at 14 ("[T]he abuse of discretion standard of review must be applied . . . ."); Switzer's Opp. to BAC's Motion [Document 16] at 3 ("[A] deferential standard of review . . . is applicable . . . .").[5]


III.   DISCUSSION

    A.   Substantive Claim – Full and Fair Review

        1.   Abuse of Discretion Standard

When reviewing a denial of benefits under ERISA for abuse of discretion, a "court will set aside the plan administrator's decision only if it is not reasonable." DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860, 869 (4th Cir. 2011).  A "decision is reasonable 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'"  Id. (citation omitted). Substantial evidence is "'evidence which a reasoning mind would accept as sufficient to support a particular conclusion.'"  Id. (citation omitted).

---

[5]    In her Motion, Switzer relied on a decision from the United States Court of Appeals for the Ninth Circuit to suggest that this Court should review the denial of LTD benefits de novo.  See [Document 12] at 14-15 (citing and quoting Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 971 (9th Cir. 2006) ("When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the administrator's decision to deny benefits.")).  Not only is Abatie not the law in the Fourth Circuit, but also Switzer appears to have abandoned this position in her Response to the BAC's Motion by conceding that the appropriate standard of review is for abuse of discretion, which requires "a Court [to] uphold a discretionary determination of a plan administrator if the decision was reasonable."  [Document 16] at 3.

Under the abuse of discretion standard, a "court is not permitted to re-weigh the evidence itself."  See Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 325 (4th Cir. 2008).  Nor may the court "substitute [its] own judgment in place of the judgment of the plan administrator."  Williams v. Metro. Life Ins. Co., 609 F.3d 622, 630 (4th Cir. 2010).  Thus, as long as the plan administrator's decision was reasonable, a court "will not disturb [the] decision . . . even if [it] would have come to a contrary conclusion independently."  Id.

Factors to be considered in determining the reasonableness of a plan administrator's decision include, inter alia:

> (1) the language of the plan;
>
> (2) the purposes and goals of the plan;
>
> (3) the adequacy of the materials considered to make the decision and the degree to which they support it;
>
> (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan;
>
> (5) whether the decisionmaking process was reasoned and principled;
>
> (6) whether the decision was consistent with the procedural and substantive requirements of ERISA;
>
> (7) any external standard relevant to the exercise of discretion; and
>
> (8) the fiduciary's motives and any conflict of interest[6] it may have.

---

[6]   A plan administrator operates under a conflict of interest when it "evaluates claims for benefits and pays benefits claims."  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008).  In her Motion,

<u>Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan</u>, 201

F.3d 335, 342-43 (4th Cir. 2000).


    2.   <u>Denial of LTD Benefits</u>

Switzer contends that the BAC denied her "a full and fair review"

of her claim for LTD benefits as required by 29 U.S.C. § 1133(2).

Specifically, she argues that the BAC "rel[ied] solely upon the

---

Switzer argued that because the BAC "admits that it both reviews claims
and is liable for the payment of benefits," there was an "inherent
conflict of interest." [Document 12] at 13-14.  The BAC pointed out
in its Response that "[t]he Plan is a self-funded employee welfare
benefit plan in which . . . the BAC [pays] all benefits from
contributions made by employees" and that Switzer "cannot present any
evidence that the BAC has any financial stake in the outcome."
[Document 17] at 4-5.  Switzer appears to have abandoned this argument,
as she neither filed a Reply to the BAC's Response, nor raised the issue
in her Response to the BAC's Motion.

Further, many of the cases addressing a plan administrator with
a conflict of interest involve an administrator "pay[ing] benefits out
of its own pocket."  <u>See,</u> <u>e.g.</u>, <u>Glenn</u>, 554 U.S. at 108.  Here,
Nationwide employees, not the BAC, contribute the funds used to pay
benefits.  <u>See</u> AR 64 ("The Active Associate must elect to reduce her
compensation for the year by the amount required to pay the Active
Associate's cost of coverage . . . .").  <u>But see</u> AR 64 ("The Employers
shall make, from time to time, further contributions to the Plan on
behalf of Active Associates.").

The Court finds that there is no conflict of interest.  However,
even assuming there was conflict of interest, that is only one factor
in the abuse of discretion analysis.  <u>See Booth v. Wal-Mart Stores,
Inc. Associates Health & Welfare Plan</u>, 201 F.3d 335, 343 (4th Cir.
2000).  Here, the facts indicate that the BAC was not inherently
biased.  It paid Switzer's disability benefits for over a year, sought
the advice of two independent medical professionals, and had an
independent third party conduct one of the administrative reviews.
<u>Cf.</u> <u>Anderson v. Reliance Standard Life Ins. Co.</u>, No. WDQ-11-1188, 2013
WL 1190782, at *7 (D. Md. Mar. 21, 2013).  Therefore, any structural
conflict of interest would "not have a significant role in the [abuse
of discretion] analysis."  <u>Williams v. Metro. Life Ins. Co.</u>, 609 F.3d
622, 632 (4th Cir. 2010).

opinions of its independent physicians and vocational consultants, and fail[ed] to adequately consider [her] medical condition, functionality, attending physician statement and vocational opinion." [Document 12] at 16.

a.   Medical and Vocational Evidence

During the initial evaluation of Switzer's continued eligibility for LTD benefits, Nationwide contacted Dr. Levitt, a Board-certified orthopedic surgeon, to review Switzer's medical records and conduct an IME.  Dr. Levitt examined Switzer on November 28, 2011 and reported a "lack of any objective measure of pathology to substantiate [Switzer's] ongoing clinical complaints," stating that there were no findings consistent with a disability.  AR 282.  He concluded that Switzer "has the capacity to return to work immediately" without limitations or modifications.  AR 283.

In evaluating of Switzer's first-level appeal, Sedgwick referred the claim to Dr. Turner for an independent assessment.  In a report dated October 3, 2012, Dr. Turner stated that he attempted to speak with Dr. Charles regarding Switzer's treatment, but was unable to do so and was told that Dr. Charles was no longer treating Switzer.  AR 343.  Dr. Turner concluded that there was no evidence Switzer was disabled and that she could return to work unrestricted.  AR 345.

Switzer contends that the reports from Dr. Levitt and Dr. Turner, which determined that Switzer was not disabled and could return to work

19

immediately, contradict the reports from her treating physicians, Dr.

Charles and Dr. Ambalavanar, which suggested that Switzer was disabled.

However, Dr. Charles's reports regarding Switzer's medical condition

contradict each other. For example, on July 18, 2011, Dr. Charles

reported that Switzer was capable of sedentary work with driving

restrictions. AR 318-21. Then, on August 5, 2011 on a Long-Term

Disability Attending Providers' Statement, Dr. Charles noted that

Switzer's condition remained unchanged, despite not having conducted

a physical examination of Switzer since July 18, yet she reported that

Switzer was "totally disabled from all types of work." AR 464-66.

However, one month later, on September 2, 2011, Dr. Charles stated that

Switzer was capable of sedentary employment with driving restrictions

of under 20-30 minutes. AR 245. Finally, in November 2011, Dr.

Charles again reported that Switzer was unable to return to work.[7] AR

242.

Switzer contends that the two LMS/TSA reports from September 2011

and November 2012 conflict with each other and with the medical reports.

See, e.g., [Document 16] at 8. However, the LMS/TSA reports were based

upon the medical evidence available at the time of their preparation.

The September 2011 LMS/TSA was completed before Dr. Levitt examined

---

[7]    Dr. Ambalavanar examined Switzer twice within a two-week period
in February 2012 and indicated to Dr. Turner that Switzer complained
of pain and expressed her desire to be off work. AR 342. After a
follow-up visit in January 2013, Dr. Ambalavanar reported that
Switzer's joint pain remained unchanged, and he gave Switzer an
application to receive a handicap parking pass from the Maryland Motor
Vehicle Administration. AR 110-14.

Switzer in November 2011 and was, therefore, based upon Dr. Charles's recommendation that Switzer could return to "sedentary work that does not require significant commute (less than 20-30 minutes)."[8]  AR 353-355.  The November 2012 LMS/TSA was based upon the opinions of Dr. Levitt and Dr. Turner that Switzer was not disabled and could work unrestricted.  AR 494-506.

While a plan administrator cannot "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," a court cannot "require administrators automatically to accord special weight to the opinions of a claimant's physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  This is because:

> the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration, or when a specialist engaged by the plan has expertise the treating physician lacks. And if a consultant engaged by a plan may have an "incentive" to make a finding of "not disabled," so a treating physician, in a close case, may favor a finding of "disabled."

Id. at 832.

---

[8]  Switzer emphasizes that the DAC did not disclose the first LMS/TSA in the initial denial letter of February 16, 2012.  However, the failure of the DAC to mention the September 2011 LMS/TSA merely suggests that in making the initial denial, the DAC relied upon De. Levitt's IME from November 2011, which concluded that Switzer could work unrestricted, and did not rely upon the LMS/TSA, which focused on finding sedentary work for Switzer, as Dr. Charles had recommended in July 2011.

When a claimant presents "inconsistent or incomplete [in connection with a claim for disability benefits], other evidence is helpful in providing an accurate evaluation of a patient's condition." McCready v. Standard Ins. Co., 417 F. Supp. 2d 684, 701 (D. Md. 2006). Thus, a plan administrator does not abuse its discretion by "deny[ing] disability pension benefits where conflicting medical reports were presented." Elliott v. Sara Lee Corp., 190 F.3d 601, 606 (4th Cir. 1999).

It appears that Switzer is asking this Court to do exactly what the Supreme Court of the United States has held is not permissible – credit the conflicting opinions of Switzer's own vocational consultant and treating physicians over the opinions of the independent consultant and physicians.

Resolving conflicts between the vocational assessments from LMS/TSA and those from Mr. Kranitz and any apparent conflicts between the medical reports from Switzer's treating physicians, and those from the independent physicians is the responsibility of the BAC, not the Court. See Spry v. Eaton Corp. Long Term Disability Plan, 326 F. App'x 674, 679 (4th Cir. 2009). The Administrative Record demonstrates that it was reasonable for BAC to adopt the medical opinions of Dr. Levitt and Dr. Turner stating that Switzer was not disabled and could work unrestricted. The Court finds that "there was nothing inherently unreasonable in the [BAC's] decision not to adopt the opinions of [Switzer's treating vocational consultant and treating] physicians."

22

Id.

> b.   Full and Fair Review

For a plan administrator's review of a claim for benefits to be "full and fair," the administrator must "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan."  29 C.F.R. § 2560.503-1(h)(1).  Here, the BAC provided Switzer with two opportunities for administrative review of the denial of LTD benefits – a first-level appeal reviewed by Sedgwick, an independent third party, and a second-level appeal reviewed by the BAC – which is more than what ERISA requires.

> Where an ERISA administrator rejects a claim to benefits on the strength of substantial evidence, careful and coherent reasoning, faithful adherence to the letter of ERISA and the language in the plan, and a fair and searching process, there can be no abuse of discretion—even if another, and arguably a better, decision-maker might have come to a different, and arguably a better, result.

Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 325-26 (4th Cir. 2008).  The BAC's final decision was based upon substantial evidence in the form of medical opinions and vocational assessments, and all of the denial decisions were presented in the three denial letters in a coherent manner.  That the BAC chose to credit the conclusions of the independent medical reports over the conflicting information provided in the reports from Switzer's treating physicians

does not warrant a finding of an abuse of discretion.

In a similar ERISA case involving three levels of administrative review in which the defendant considered all of the medical evidence submitted by the plaintiff, procured an independent medical evaluation, and obtained a vocational assessment, Judge Bennett of this Court held that the "process of review was both deliberate and principled" and that the denial of benefits was supported by substantial evidence.   See McCready v. Standard Ins. Co., 417 F. Supp. 2d 684, 697-98, 701-02 (D. Md. 2006).   Like the defendant in McCready, the BAC conducted a deliberate and principled review to reach a conclusion supported by substantial evidence.[9]

---

[9]   Switzer's suggestion that this Court cannot rely on McCready v. Standard Ins. Co., 417 F. Supp. 2d 684 (D. Md. 2006), because McCready had not been receiving LTD benefits, unlike Switzer – who received LTD benefits before they were terminated – is misplaced.   Switzer suggests that the BAC's decision to deny her LTD benefits is inconsistent with the fact that the BAC initially provided the benefits.   See [Document 16] at 10 ("It has been held that 'a reversal of a decision of disability may warrant significant skepticism when substantial evidence does not support the conclusion that the disability has ceased.'" (quoting Smith v. Cont'l Cas. Co., 276 F. Supp. 2d 447, 460 n.6 (D. Md. 2003), vacated on other grounds, 369 F.3d 412 (4th Cir. 2004)).   However, the Fourth Circuit has stated:

> a plan administrator [does not] abuse its discretion by terminating benefits after a review of available information shows that the initial grant of benefits was contrary to the terms of the plan [because o]therwise, plan administrators would be severely constrained from terminating benefits that were erroneously granted, resulting in plan administrators becoming more hesitant about initially granting benefits lest they be stuck with a wrong decision.

The Court concludes that a reasonable jury could not find that the BAC's denial of Switzer's claim for LTD benefits was anything but reasonable in light of the evidence presented during the administrative review process.  Thus, the Court holds that Switzer received a full and fair review of her claim for LTD benefits that was supported by substantial evidence and that was the result of a deliberate and principled reasoning process.

B.  <u>Procedural Claim – Appeal and Notice Requirements</u>

Switzer contends that the BAC did not provide her with adequate notice of the denial of LTD benefits as required by 29 U.S.C. § 1133(1) and the federal regulations implementing and interpreting ERISA. ERISA requires a plan administrator provide a claimant with a notification of the denial of benefits that "set[s] forth the specific reasons for such denial."  29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503-1(g)(1)(i).[10]

---

<u>Wilson v. Metro. Life Ins. Co.</u>, 183 F. App'x 286, 292 (4th Cir. 2006).

[10]    The ERISA regulations also require "the plan administrator [to] provide a claimant with written or electronic notification of any adverse benefit determination" that "set[s] forth, [<u>inter alia</u>, t]he specific reason or reasons for the adverse determination."  29 C.F.R. § 2560.503-1(g)(1)(i).  Switzer alleges that the violation of the ERISA appeal and notice requirements was the BAC's failure to include in the denial letter "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."  29 C.F.R. § 2560.503-1(g)(1)(iii); <u>see</u> Compl. ¶ 17.  However, Switzer's briefings focus on the alleged "fail[ure] to identify the specific reasons for the[] adverse determination in both the initial review of December 12, 2012 . . . and second level decision of March 21, 2013."

It appears that Switzer contends that the BAC failed to identify the specific reasons for the denial of benefits in the December 10, 2012 initial denial letter and the March 21, 2013 second-level appeal denial letter because those letters did not "specify the type of employment that [Switzer] could perform" and gave "no clear indication as to whether or not the [BAC] found that [Switzer] has the ability to engage in alternate sedentary work, or the ability to perform her own occupation."[11]   [Document 12] at 18, 24.

Whether a benefits denial letter complied with the applicable "ERISA regulations is a question of law, and therefore, subject to <u>de novo</u> review."  <u>Brogan v. Holland</u>, 105 F.3d 158, 165 (4th Cir. 1997).  However, as long as there is "substantial compliance" with the ERISA regulations, a procedural defect will not invalidate a plan administrator's decision.  <u>Id.</u>  Substantial compliance exists when a plan administrator has provided the claimant "'with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review.'"  <u>Id.</u> (citation omitted).

---

<u>See, e.g.</u>, [Document 12] at 25.  The Court concludes that Switzer's contention as to the notice requirements is properly brought under § 2560.503-1(g)(1)(i).

[11]   Switzer appears to conflate her substantive and procedural claims.  <u>See</u> [Document 12] at 18, 21, 24-25.  However, whether the BAC included the specific reasons for denial in the December 10, 2012 and March 21, 2013 denial letters does not affect the substantive validity of an ERISA claim.  Therefore, the Court will analyze the content of the letters under Switzer's procedural claim as to the appeal and notice requirements.

Here, it is clear that the initial and the second-level appeal denial letters complied with this standard. Switzer provides no authority, either from case law, ERISA, or the ERISA regulations, to support her contention that to comply with the "specific reasons for [a] denial" requirement, the BAC must have stated, in finding that Switzer was capable of engaging in substantial gainful employment, whether the finding was based upon a determination that Switzer could perform her own occupation or another occupation with an income level equal to or greater than on-half of her previous income. Further, the evidence indicates that Switzer had "'a sufficiently clear understanding of the [BAC']s position to permit effective review.'" See Brogan, 105 F.3d at 165.

The initial denial letter states that the DAC denied Switzer's claim for LTD benefits because Switzer "d[id] not meet the definition of Disability under the Plan, specifically that [she] was capable of engaging in Substantial Gainful Employment." AR 138. It also states that the DAC based its denial, in part, on the IME from Dr. Levitt, who found "that [Switzer] ha[s] the capacity to return to work immediately" with no limitations or modifications. AR 138. Before submitting her first-level appeal, Switzer received the IME from Dr. Levitt and the September 22, 2011 LMS/TSA, which she provided to Mr. Kranitz for purposes of preparing a vocational assessment. AR 157. Switzer's attorney wrote in the first-level appeal letter, that "the issue in this case is whether or not Ms. Switzer is able to engage in

substantial gainful employment as defined by the policy and earn at least 50% of her pre-disability income." AR 131.

Similar to the initial denial letter, the second-level appeal denial letter stated that the BAC denied Switzer's claim because she was not prevented from engaging in substantial gainful employment and was therefore not LTD Disabled.  AR 121.  The letter also relied upon the IME and supplement from Dr. Levitt, as well as the independent report from Dr. Turner.  The Complaint in the instant case, filed in response to the denial of the second-level appeal, alleges that Switzer is disabled because she is precluded from engaging in substantial gainful employment.  Compl.  ¶ 18.

The Court holds that the initial and second-level appeal denial letters did set forth the specific reasons why Switzer's claim for LTD benefits was denied because the letters stated that they were based upon findings that Switzer was capable of returning to work without restriction and/or was capable of engaging in substantial gainful employment.  "Even if [the letters] could have been more explicit, the[y] complied with ERISA's notice requirements" because "[r]ead in [their] entirety, the [letters] provided [Switzer] with all the information necessary to perfect h[er] claim."  Cf. Gelumbauskskas v. USG Corp. Ret. Plan Pension & Inv. Comm., 1:09-CV-00890, 2010 WL 2025128, at *5 (D. Md. May 17, 2010).

The Court concludes that no reasonable jury could find that the initial denial letter of February 16, 2012 and the second-level appeal

denial letter of March 21, 2013 violated ERISA's appeal and notice requirements.


IV.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Plaintiff's Motion for Summary Judgment, or in the Alternative, Motion to Remand [Document 12] is DENIED.

2.   Defendant's Motion for Summary Judgment [Document 13] is GRANTED.

3.   Judgment shall be entered by separate Order.


SO ORDERED, on <u>Tuesday, August 12, 2014</u>.


_____/s/_____
Marvin J. Garbis
United States District Judge

29